The People of Puerto Rico, Plaintiff and Appellee, *v.* Carlos Marchand Paz, Defendant and Appellant.

No. 7211.   Decided November 30, 1938.

*Angel D. Marchand Paz* for appellant.   *R. A. Gómez, Prosecuting Attorney,* for appellee.

ON MOTION FOR RECONSIDERATION

Mr. Justice Wolf delivered the opinion of the court.

On the 26th of July, 1938, the parties to this case agreed to submit it on its merits and upon the arguments and the evidence brought up to this court in case No. 6639, *People of Puerto Rico* v. *Carlos Marchand Paz,* for murder in the second degree. The judgment in this latter case was reversed and sent back for further proceedings not inconsistent with the opinion of this court.   In the present appeal, No. 7211, the judgment of the lower court was affirmed more or less on the authority of *People* v. *Peña,* 50 P.R.R. 822, 824, to effect that the offense of carrying a prohibited weapon was distinct from murder in the second degree.

In the murder case the judgment was reversed because of improper manifestations made by the prosecuting attorney to the jury.

It transpired that Judge De Jesús, who tried the case, was preparing his instructions when the improper remarks were made and did not hear the comments of the district attorney. Therefore, what the district judge did was to consider the evidence developed before him without any reference to the remarks of the district attorney.

The argument of the appellant is that if this court allows the judgment of affirmance to stand, when the case goes back to the district court the jury will have the knowledge or the inkling that Carlos Marchand Paz was convicted of carrying a prohibited weapon and that this knowledge would affect the verdict of the jury. The defense of Carlos Marchand Paz was in effect that he was not present in the murder that was committed and the real offender was another person. The appellant concedes that in the ordinary case where a plea of self-defense is entered there genrally can be no question of carrying a prohibited weapon, if one was actually used, but the facts of the present case, as we have indicated, differ widely.

The appellant in this case has filed no brief and no assignment of errors, but submitted on the evidence and arguments in the murder case. The murder case was reversed in effect on affidavits which were not before the district court when it rendered its judgment. No special arguments were presented to us at the hearing on the lines that are now suggested. The failure to put this court in a position to judge the merits of the present application would be sufficient to overrule the motion for reconsideration.

It frequently happens that one judge or jury trying the case will convict on certain evidence and another will not. Judge De Jesús, who heard the evidence, definitely found that Carlos Marchand Paz was carrying a prohibited weapon. The question of guilt in the murder case was left to the jury which convicted Carlos Marchand Paz. Another jury might decide to the contrary on the same evidence that convinced

Judge De Jesús that the defendant was guilty of carrying a prohibited weapon.

▉ We can not assume with appellant that on a second trial for murder, the jury will be informed as to the result of the appeal in the instant case. Much less can we assume that the jury will be improperly influenced by any rumors or other information foreign to the evidence which may be adduced at the trial and as a result of such improper influence will violate their solemn duty and the assurance usually given by them to the effect that they will try the case according to the evidence submitted to them and to the law as explained to them in the instructions given them by the trial judge. In any event, the fear of counsel for appellant that something of this sort may happen on a second trial for murder, furnishes no satisfactory reason for setting aside the judgment of this court in the instant case.

The motion for reconsideration will be overruled.

Mr. Chief Justice Del Toro and Mr. Justice De Jesús took no part in the decision of this case.

MR. JUSTICE TRAVIESO, dissenting.

Before setting forth the reasons which oblige me to dissent from the order of November 30, 1938, overruling appellant's motion for reconsideration of the judgment of this Supreme Court of July 30, 1938, by which the judgment of the District Court of San Juan in this case was affirmed, it seems to me proper to make a statement of the essential facts in this case.

On June 13, 1936, the District Attorney of San Juan, filed two informations against Carlos Marchand Paz. In the first, case No. 2870, he was accused of murder, consisting in his having unlawfully killed the insular policeman, Orlando Colón, with a pistol, "on or about June 5, 1936, and in Río Piedras, Puerto Rico." In the second, case No. 10930, it was charged that "on or about June 5, 1936, and in Río Piedras, Puerto Rico, . . . . he unlawfully, wilfully, and maliciously

carried upon his person, for the purpose of offense and defense, a pistol, which is a firearm, etc."

On August 10, 1936, upon being arraigned, the defendant moved that the cases be tried together. At the trial of the two cases, the defendant set up an alibi as a defense to both charges, that is, that on the night of June 5, 1936, between 8 : 30 and 9 : 00 p. m., the hour at which according to the evidence for the prosecution the policeman Colón was killed, the defendant was outside of the town of Río Piedras, on a farm in the country, and that therefore it could not have been he who killed Colón, or who was carrying the prohibited weapon at the place and at the time fixed by the evidence for the prosecution.

On December 18, 1936, the jury sitting on the prosecution for murder, rendered their verdict, finding Marchand guilty of second degree murder. On the same day the district judge found the defendant guilty of carrying a prohibited weapon and sentenced him to three months in jail. On February 19, 1937, the defendant filed a motion for a new trial, based upon the ground, among others, that the jury had been improperly influenced by the statements made by the prosecuting attorney in argument to the jury to the effect that a certain witness for the defense, after testifying before the jury, had gone to the office of the district attorney and had advised him that he had been offered $30 to sail after having confessed that he was the one who killed Colón. On April 13, 1937, the district court overruled the motion for a new trial and on the 19th of that month sentenced the defendant to twenty years imprisonment in the penitentiary at hard labor.

Both judgments were appealed to this Supreme Court, and there was a hearing in the murder case (No. 6639) on April 18, 1938. On July 28, 1938, this court, believing that the alleged conduct of the district attorney was censurable and that it could not be tolerated, entered a judgment reversing the judgment of the lower court and ordered a new trial

to be had.   In the opinion on which that judgment was based, we said:

. ". . . The conduct of the district attorney had in total probability already impressed an indelible mark upon the minds of the triers of fact.   The statement of the district attorney, if believed by the jury, tended towards an admission of guilt by the defendant and indirectly accused the defense of the serious crime of tampering with a witness.   We cannot determine the full effect of such a state-ment, but it was, it seems to us, inevitably prejudicial.

". . . There is no doubt that the jury received what amounted to improper evidence through the mouth of the district attorney and we are convinced that the prejudicial nature of that evidence could not have been cured by anything the judge might have said.   The damage was irreparable."

On July 27, 1938, the present case, No. 7211, for carrying a prohibited weapon, was submitted to our consideration upon the same evidence and briefs presented to us in the murder case, No. 6639.   On July 30, 1938, this court entered judgment affirming the judgment of the district court, by which Carlos Marchand Paz was found guilty of unlawfully carrying a pistol, in the town of Río Piedras, between 8:30 and 9:00 on the night in question.

Appellant has moved that we reconsider the judgment affirming that of the district court, and that we either (a) reverse the judgment of the lower court and order a new trial, or (b) set aside our judgment of July 30, 1938, and leave the case pending until there has been a new trial in the lower court as ordered by our judgment in the murder case.   My distinguished colleagues have proposed and agreed that the motion for reconsideration be denied.   I differ fundamentally from that judgment, and will set forth briefly the reasons on which I base my dissent.

The two offenses with which the defendant is charged, although technically distinct and separate, are so intimately connected with each other that the conviction of the defendant in one case must inevitably carry with it his conviction

in the other. The situation of the defendant in this case is even more difficult in view of the nature of his defense—an alibi. His position would be different if this were a case of self-defense, since in those cases the defendant admits the commission of the homicide and merely tries to justify it. In those cases a previous conviction for unlawfully carrying a weapon does not in any way prejudice the accused in the homicide case. The defense itself may prevail, even though the weapon with which that right was exercised was unlawfully carried.

From the record in this case it does not appear that the pistol with which Colón was killed was seized, or that there was any evidence showing that the defendant was the owner or possessor of a pistol. Defendant's conviction in both cases was based on inferences derived from the evidence offered by the prosecution in support of the murder charge.

I am of the opinion that the legal effect of a judgment ordering a new trial should be to place the defendant in the same legal and constitutional situation in which he was at the beginning of the first trial that was set aside by the judgment of reversal. The reversal of the judgment carried with it the setting aside of the verdict and also of the record on which the verdict was based, leaving the defendant in a position to appear before the new jury which is to try him, shielded by the presumption of innocence established by the law in his favor.

Can Carlos Marchand Paz appear before a jury which will presume him innocent and which will be in a position to give him the benefit of any doubt that may arise in their minds as to his guilt, after the press and the radio have spread to all parts of our small and overpopulated island the news that this Supreme Court, in affirming the judgment of the district court, held definitely that Carlos Marchand Paz was in the town of Río Piedras between 8:30 and 9:30 on the night of June 5, 1936, and that he was then and there unlawfully carrying a pistol? What value can the alibi have as a defense

before the new jury, in the face of a judgment of this Supreme Court finding as an established fact that the defendant was carrying a weapon at the place and at the time that Colón was killed, or in other words, that the defendant at the time the crime with which he is charged was committed was not at another, different place?

My esteemed colleagues endeavor to answer the questions which I have just posed, stating in the prevailing opinion:

"We cannot assume with appellant that on a second trial for murder, the jury will be informed as to the result of the appeal in the instant case. Much less can we assume that the jury will be improperly influenced by any rumors or other information foreign to the evidence which may be adduced at the trial and as a result of such improper influence will violate their solemn duty and the assurance usually given by them to the effect that they will try the case according to the evidence submitted to them and to the law as explained to them in the instructions given them by the trial judge. In any event, the fear of counsel for appellant that something of this sort may happen on a second trial for murder, furnishes no satisfactory reason for setting aside the judgment of this court in the instant case."

My reply to the above-quoted paragraph is that, on the contrary, what we must assume is that in this era of intense publicity in which we live, in which the press and the radio inform us daily of the events of the day and give us word for word the judgments of the courts, a goodly number at least of the citizens who will form the jury panel which will try the defendant for having killed the policeman Colón, will be aware of the decision of this court in this case. That being so, the defendant will run the risk of not having the just and impartial trial to which by law he is entitled.

For the same reasons that we gave for reversing the judgment in the murder case, set forth in the above-quoted paragraphs, I am of the opinion that the judgment in this case may leave "an indelible mark upon the minds of the triers of fact"; that if the statements of the district attorney in the murder case were sufficient to vitiate the verdict and to

justify our setting it aside, the judgment of which reconsideration is now asked may more seriously prejudice the defendant at the new trial, for it not only involves a finding of guilty but also destroys completely the theory of the defense, placing the defendant at the place and at the time of the crime, armed with a pistol. It is unquestionable that the knowledge which the jury, or some of its members may have, will be "inevitably prejudicial" to the defendant.

How would the defendant be able to protect himself against the prejudice which we have characterized as inevitable? Would it be advisable or prudent to examine each of the jurors as to his knowledge of the judgment in this case, thus running the risk of informing those who know nothing of it and of leaving an ineradicable impression on the mind of all? Will counsel for the defendant comply with his duty if, knowing of the probable prejudice existing in the minds of the jurors, he refrains from examining them as to such prejudice, thus exposing his client to a trial by a jury prejudiced against his defense?

It will be argued that the court will protect the defendant by instructions to the jury as to the law applicable to the case. To that we may reply: If we reversed the judgment in the murder case because we were "convinced that the prejudicial nature of that evidence could not have been cured by anything the judge might have said," and were of the opinion that the harm to the defendant was "irreparable," what reason or ground can we have for believing that a jury which could not erase from its mind a few words spoken in extemporaneous heat by a district attorney, will be capable of erasing the impression which will undoubtedly be caused by an opinion of this court, rendered with all the calmness and deliberation of an appellate court?

Because I believe that a reconsideration of our judgment will not affect in the slightest degree the interests of justice and that, on the contrary, a denial of the motion can and surely will prejudice the defendant's substantive rights, I am

of the opinion that we ought to reconsider our judgment and leave the case pending decision until the murder case be finally decided.